# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# GREENVILLE DIVISION

| | |
|---|---|
| Marta Gomez, )<br>)<br>    Plaintiff, )<br>) | |
|   v. ) | Civil Action No. 6:20-cv-2156-TMC |
| ) | **ORDER** |
| Easlan Management, )<br>)<br>    Defendant. )<br>) | |

Because this case involves claims for discrimination based on race and national origin in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e to 2000e-17, and racial discrimination in violation of 42 U.S.C. § 1981, (ECF No. 10), it was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.) for the handling of all pretrial matters.  Now before the court is the magistrate judge's thorough Report and Recommendation (the "Report") recommending that Plaintiff's motion for contempt, for sanctions, and to compel (ECF No. 57) be denied and declining to certify facts to the court for contempt proceedings.  (ECF No. 96 at 13).  Plaintiff filed objections to the Report (ECF No. 100) and the nonparties who oppose the motion filed a reply to the objections (ECF No. 101).

## I. Background

On April 26, 2021, the magistrate judge entered an order (the "subpoena order") (ECF No. 49) granting in part and denying in part Plaintiff's motion to compel compliance with non-party subpoenas to 2207wh LLC, Handford Capital, LLC, and Passiveinvesting.com, LLC (collectively, the "subpoenaed entities") (ECF No. 20).  The magistrate judge granted the motion only as to

subpoena items 3(f), 3(g), 4(f), and 4(g).[1] (ECF No. 49 at 12). Specifically, the magistrate judge ordered the subpoenaed entities to "produce all documents responsive to item numbers 3(f), 3(g), 4(f) and 4(g)" and directed Plaintiff and the subpoenaed entities to "agree on search terms to be used" in locating such responsive documents by May 3, 2021. (ECF No. 49 at 12). The magistrate judge then ordered that the actual production be accomplished by May 24, 2021. *Id*.

Subpoena item number 3 requested the following:

> 3. All communications from July 1, 2018 to the present, including electronic communications, <u>between members of the Owner Group</u>[2] regarding:
>
> . . .
>
> f. Marta Gomez.
>
> g. Elisha Codrington

Subpoena item four requested similar information:

> 4. All communications from July 1, 2018 to the present, including electronic communications, <u>between any member(s) of the Owner Group and Easlan Management</u> regarding:
>
> . . .
>
> f. Marta Gomez.
>
> g. Elisha Codrington

(ECF Nos. 20-1;20-2; 20-3).

A couple of weeks after the date for compliance had passed, Plaintiff filed this motion for contempt, for sanctions, and to compel compliance with the subpoena order. (ECF No. 57). Although Plaintiff acknowledges that "[i]nitially, counsel for the [subpoenaed entities] engaged .

---

[1] By separate order, the court addressed Plaintiff's objections to the magistrate judge's partial denial of the motion.
[2] The subpoenas defined "Owner Group" to include (a) Dan Hanford, (b) Danny Randazao, (c) Brandon Abbott or (d) 2207 wh LLC; (e) passiveinvesting.com, LLC, (f) Handford Capital or any investor or managing agent of these entities jointly or severally. (ECF Nos. 20-1 at 5; 20-2 at 5; 20-3 at 5).

. . in what appeared to be productive discussions about what terms should be used," Plaintiff complained that, "[i]n the end, however, counsel for [the subpoenaed entities] stated (two days after the deadline for compliance) that [they] would only search for the names of the Plaintiff and Codrington . . . , which is what they had agreed to do" several months before the initial motion to compel was filed. *Id*. at 1. Furthermore, the Plaintiff argued, the subpoenaed entities "still have produced nothing in response to the subpoena or this Court's Order." *Id*. The subpoenaed entities filed a response in opposition, noting that, despite a good faith effort, the parties "were unable to agree upon broader terms than the court order." (ECF No. 61). The subpoenaed entities hinted that they had not yet produced responsive documents in light of Plaintiff's objections to the magistrate judge's subpoena order, *id*. at 1, which did not specifically object to the extent the order ruled on items 3(f), 3(g), 4(f) and 4(g) but implied Plaintiff was seeking to have the subpoena order "vacated in its entirety[,]" (ECF No. 53). Despite believing that Plaintiff was "asking this court to enforce the same order [s]he is asking the District court to vacate," the subpoenaed entities nonetheless sent Plaintiff responsive documents simultaneously with their opposition memorandum "out of an abundance of caution." (ECF No. 61 at 2). In reply, Plaintiff argues that the subpoenaed parties fail to offer an adequate excuse for failing to comply with the subpoena or with the magistrate judge's subpoena order. (ECF No. 63). Plaintiff further argues that the production from the subpoenaed entities was insufficient in any event because they "did not search emails to and from Plaintiff and Codrington to look for" responsive documents and because many pages of the production were illegible." *Id*. at 3–4.

While the magistrate judge took this matter under advisement, counsel for Plaintiff and the subpoenaed entities continued to have substantial difficulty in conducting discovery and sought to involve the court on numerous occasions. During this time, Plaintiff filed a second motion to

3

compel with respect to her second set of discovery requests served on Defendant, (ECF No. 58), which the parties eventually resolved (ECF No. 67), and a third motion to compel depositions of the subpoenaed entities/ownership group, together with 33 pages of emails reflecting counsel's ultimately unsuccessful attempts at simply scheduling depositions, (ECF No. 72), which Plaintiff later withdrew (ECF No. 76).  The subpoenaed entities then moved for an award of attorney fees for having to respond to the motion to compel depositions (ECF No. 78) but later withdrew the motion for sanctions after the magistrate judge reviewed the materials and directed that counsel submit a statement of fees (ECF Nos. 79, 82).  In June 2021, the subpoenaed entities and other members of the ownership group sold 2207 North along with related assets such as computers that the subpoenaed entities had purchased for Defendant's use.  (ECF No. 73-1).

On August 16, 2021, the magistrate judge directed counsel for the parties and subpoenaed entities to confer regarding the motion for contempt, for sanctions, and to compel compliance and to submit a joint report as to whether or not the motion had been resolved.  (ECF No. 84).  Rather than file a joint report, however, the parties and subpoenaed entities filed individual reports.  (ECF Nos. 86; 87; 88).

Plaintiff contends that the subpoenaed entities did not comply with the magistrate judge's subpoena order because they searched "only the computers . . . personally use[d] [by members of the ownership group]" and not "the computers used by Plaintiff and Codrington."  (ECF No. 87 at 2).  Based on Rule 30(b)(6) depositions of principals for the subpoenaed entities, Plaintiff asserts that the email addresses used by her and Codrington "were handled by POP3 servers," meaning that email communications were downloaded locally and maintained, if at all, on individual computers rather than being stored on the server.  *Id*. at 4.  It appears that the subpoenaed entities owned the computers used by Plaintiff and Codrington during their employment with Defendant

4

until the sale of 2207 North on June 30, 2021.  Plaintiff continues to seek a contempt ruling because the subpoenaed entities had not searched these two computers prior to selling their ownership interests.  *Id*. at 3.

On the other hand, the subpoenaed entities acknowledge they purchased the computers but asserted that Defendant had possession of these computers at all relevant times.  (ECF No. 86 at 4).  The subpoenaed entities state that, as of the filing of their Status Report, they had "produced all emails, which discuss either Plaintiff, or Ms. [Codrington], sent or received by anyone in the owner group to one another or Easlan."  *Id*.  According to the subpoenaed entities, they "[do] not use the domain name that is on the Easlan Computers so there would be no reason to search them for communications among themselves."  *Id*.  Further, the subpoenaed entities point out that Plaintiff has not articulated why Defendant could not have searched the computers while it had possession of them.  *Id*.

The magistrate judge subsequently conducted a status conference during which the parties and the subpoenaed entities claimed they needed additional time to determine who had access to the computers used by Plaintiff and Codrington during their employment with Defendant.  (ECF No. 90).  During the hearing, Plaintiff acknowledged it was "unlikely" a search of these two computers would locate internal communications amongst members of the owner group that had to be produced under items 3(f) and 3(g).  (ECF No. 99 at 4).  However, Plaintiff apparently believes that external communications from the owner group could possibly be found on these computers.  *Id*.  The subpoenaed entities took the position that Plaintiff was asking them to "search e-mail addresses of people who are not us."  *Id*. at  6.  The magistrate judge directed the parties and subpoenaed entities to determine who still had access to the two computers and to submit status updates.

5

Defendant submitted a post-conference status report indicating that, "[w]ith the sale of the property, [Defendant] Easlan no longer manages 2207 North and lost access to the data server for that location." (ECF No. 93 at 2). The subpoenaed entities' report stated that "[a]ny emails sent or received by Plaintiff should be on the computers left at the 2207 North property that is under new ownership" and that, because "the emails were handled through a pop server," such emails were "downloaded directly to the computers" and "are not on a server the nonparty witnesses have access to." (ECF No. 92 at 1). They confirmed that, although the subpoenaed entities "purchased the computers for Easlan's employees use[,] the computers stayed with the property when it was sold" and "Easlan had possession of these computers and access to the emails until the property was sold at the end of June." *Id*. Noting none of the communications sought by the subpoenas would use a 2207North.com domain, the subpoenaed entities "did not search those computers Easlan had possession of and used because the email addresses connected with those computers are not email addresses the nonparty witnesses used to communicate with the Defendant or with one another" and claimed "[a]ny communications by the nonparty witnesses regarding Ms. Gomez or Ms. Codrington would have been from the email servers previously searched" and "have been produced" already. *Id*. And, finally, Plaintiff submitted a post-conference status report reiterating her position that the subpoenaed entities refused to comply with the magistrate judge's subpoena order by failing to search the computers used by Plaintiff and Ms. Codrington and now, having sold the business and the computers, have frustrated Plaintiff's ability to obtain the information she seeks. (ECF No. 94).

## II. Legal Standards

Rule 45 of the Federal Rules of Civil Procedure authorizes the issuance of a subpoena *duces tecum* seeking the production of documents (or other materials) from a nonparty. *See*

*generally* Fed. R. Civ. P. 45(a); *Alston v. DIRECTV, Inc.*, No. 3:14-cv-04093-JMC, 2017 WL 1665418, at *2 (D.S.C. May 3, 2017) ("A party to litigation may issue a subpoena for the production of discoverable material to a non-party to the litigation."). Rule 45(g) allows a court to "hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it." Fed. R. Civ. P 45(g). The party seeking a civil contempt order must first prove the following elements by clear and convincing evidence:

> (1) the existence of a valid court order;
>
> (2) the order was in the moving party's "favor";
>
> (3) a knowing violation of the terms of the order; and
>
> (4) the moving party suffered harm from the violation.

*Consumer Fin. Prot. Bureau v. Klopp*, 957 F.3d 454, 461–62 (4th Cir. 2020) (quoting *United v. Ali*, 874 F.3d 825, 831 (4th Cir. 2017)). "Once the movant establishes these elements, the burden shifts to the [opponent] to show good faith [in making] all reasonable efforts to comply with the enforcement order." *Id.* (internal quotation marks omitted). "A defendant who fails to meet this burden *may* be held in civil contempt." *Id.* (emphasis added). That is, even if the proponent makes the requisite showing and the opponent fails to show all reasonable efforts to comply, the imposition of contempt is nonetheless discretionary. *See, e.g.*, *Jones v. Thomas Jefferson Univ. Hosps., Inc.*, Civ. A. No. 13-4316, 2015 WL 1255997, at *1 (E.D. Pa. Mar. 19, 2015) (imposition of contempt is discretionary). Indeed, "[b]ecause the contempt power is a substantial one, it should be used sparingly and not be lightly invoked." *Hartman v. Lyng*, 884 F.2d 1103, 1106 (8th Cir. 1989).[3]

---

[3] With regard to the magistrate judge's contempt authority, the court concludes the Report correctly outlines such authority as provided in 28 U.S.C. § 636(e)(6)(B)(iii), including the certification process prescribed therein, and incorporates these standards as set forth in the Report. (ECF No. 96 at 1, 9).

### III. Magistrate Judge's analysis

The portion of the Subpoena Order at issue here, as highlighted by the magistrate judge, "required the [subpoenaed entities] to produce, by May 24, 2021, '[a]ll communications from July 1, 2018 to the present, including electronic communications, between any member(s) of the Owner Group and Easlan Management regarding: . . . [Plaintiff and] Elisha Codrington.'"  (ECF No. 96 at 9–10 (citing ECF No. 49 at 6–7, 12)).  The magistrate judge found that the first two elements for civil contempt under Rule 45(g) are satisfied in this case, noting that "[t]he Subpoena Order was clearly in the favor of the movant, Plaintiff, and the alleged contemnors, the [subpoenaed entities], had actual or constructive knowledge of the Subpoena Order insofar as their counsel received a notice of electronic filing regarding the Order." *Id*. at 9.

The magistrate judge focused, then, on the question of whether the subpoenaed entities "*knowingly* violated the Subpoena Order." *Id*. at 10 (emphasis added).  The magistrate judge explained that, pursuant to Rule 45, "the Subpoena Order required the [subpoenaed entities] to search the documents in their possession, custody, or control and to produce responsive documents" regarding Plaintiff and Ms. Codrington. *Id*. at 11.  The magistrate judge found that this "is exactly what the [subpoenaed entities] did by searching their servers for communications between their owners and between their owners and Defendant," rejecting Plaintiff's contention that "they should have searched the computers that were located at the property" because "those computers were not in their possession, custody, or control." *Id*.  The Report explained the basis for the conclusion in detail as follows:

> The [subpoenaed entities'] Rule 30(b)(6) deponent testified that 2207 wh LLC owns the domain 2207north.com and that the emails for 2207north.com are through a hosting service that uses POP3 emails, which means the server downloads the emails to a person's computer and deletes it from the server once it is downloaded. (ECF No. 94-2 at 5–6). Therefore, any emails to and from 2207north.com

8

> "would have been housed on the computers that were located on the property." *Id*. at 6. The deponent also testified that the [subpoenaed entities] "did not have access to" the computers and that Defendant would have had access "[b]ecause they're the onsite management company that has access to the computers where the e-mails were housed." *Id*. at 8. Further, the deponent testified that although 2207 wh LLC owned the computers that Plaintiff and Codrington used because they "owned the property and the assets within it," "access to those computers is given to the property management company when they are managing the asset"; therefore, the [subpoenaed entities] never had access to the computers. [*Id*. at 9–10.] . . . Notably, Plaintiff and Codrington were employees of Defendant, not the [subpoenaed entities], and the record establishes that the emails were not stored on a server such that the [subpoenaed entities] had access to them and that, although the [subpoenaed entities] purchased the computers, they were used by Defendant's employees and remained at the property managed by Defendant.

*Id*. at 11–12. Therefore, the magistrate judge concluded the subpoenaed entities did not knowingly violate the subpoena order.

Furthermore, the magistrate judge found that, because Plaintiff had interposed objections as to the subpoena order's partial denial of her motion to compel the status of the Subpoena Order—even suggesting that the subpoena order might be "fully vacated"—"what the [subpoenaed entities] would be required to produce was in question." *Id*. at 12. Thus, for this additional reason, the magistrate judge "[could not] find that their delayed production was a knowing violation of the Subpoena Order," even though "the better course would have been for the [subpoenaed entities] to request that the Court extend or stay their production deadline." *Id*. at 13.[4]

Based on the foregoing analysis, the magistrate judge declined to certify facts for a contempt proceeding pursuant to 28 U.S.C. § 636(e)(6)(B)(iii) and recommended that Plaintiff's motion for contempt, for sanctions, and to compel (ECF No. 57) be denied. (ECF No. 96 at 13).

---

[4] Because the magistrate judge determined that the subpoenaed entities did not knowingly violate the subpoena order, she did not address the final contempt element of whether the movant suffered harm in the Report. (ECF No. 96 at 13 n.7).

### IV. Discussion

Having closely reviewed the Report, the briefs of the parties and the subpoenaed entities, and the voluminous documents and other filings submitted since the inception of this discovery dispute, the court concurs with the recommendation of the magistrate judge and incorporates her factual findings and legal conclusions herein. Counsel's inability to cooperate has required the magistrate judge to referee their discovery disputes at every turn, and the magistrate judge has done an admirable job sifting through the convoluted history underlying these disputes.[5]

As for Plaintiff's objections to the Report, (ECF No. 100), the court has considered them and finds no reason to depart from the magistrate judge's recommended disposition of Plaintiff's motion for contempt and sanctions. First, Plaintiff objects to the finding in the Report that the subpoenaed entities complied with the subpoena order "by searching their servers for communications between their owners and between their owners and Defendant." (ECF Nos. 96 at 11; 100 at 4–5). Plaintiff contends that this finding is erroneous because it is undisputed that any emails from the subpoenaed entities to Defendant or its employees (such as Plaintiff or Ms. Codrington) were conveyed via a pop server, meaning that once the recipient retrieves the email it is stored on that person's individual computer and deleted from the server itself. (ECF No. 100 at 4). Thus, Plaintiff concludes, there was nothing to find from a search of a server and "the only place on which the emails could have resided are the two computers that the [subpoenaed entities] concede they never searched." *Id*. at 5. The Report literally says the same thing. The magistrate judge explained at length that the subpoenaed entities' emails were transmitted through a hosting device using a pop server and, therefore, any emails between them and Defendant (or its

---

[5] By the court's count, the magistrate judge has been burdened with at least 31 filings—many of which include lengthy attachments—relating to Plaintiff's complaints about the subpoenas served upon the nonparty subpoenaed entities. In turn, this number of submissions has necessitated substantial court involvement.

10

employees) "would have been housed on the computers that were located on the property." (ECF No. 96 at 11). The bottom line in the Report is that the subpoenaed entities did not knowingly violate the order by failing to retrieve emails from Plaintiff's computer or Ms. Codrington's computer before the sale of the property and its assets. *Id*. at 11–12. Plaintiff has pointed to nothing suggesting that the subpoenaed entities should have known on May 24, 2021, the date of production set by the magistrate judge in the subpoena order, that they had to search computers that had been used by Plaintiff and Ms. Codrington and which were in the physical possession of Defendant. It is clear to the court that this issue did not even arise until *after* Plaintiff had already filed her contempt motion seeking sanctions. This issue is not mentioned in either the motion for contempt itself (ECF No. 57) or in Plaintiff's reply in support of the motion (ECF No. 63).

For these same reasons, the court rejects Plaintiff's argument that the subpoenaed entities violated the subpoena order because they owned the computers and therefore enjoyed possession, custody, and control over them and should have searched them. (ECF No. 100 at 6–7). Again, it is far from clear that the subpoena order required the subpoenaed entities to find not only emails they themselves sent to Defendant regarding Plaintiff or Ms. Codrington but to also *search for emails received by Defendant on computers being used by and in the physical possession of Defendant*. It would be reasonable to assume that any such communications on the receiving end would be produced by Defendant.[6]

The court reiterates the admonishment issued by the magistrate judge in the subpoena order. "District courts typically do not appreciate having to referee discovery disputes among

---

[6] The court notes that the subpoenaed entities, in their reply to Plaintiff's objections to the Report, request that they be awarded attorney's fees based on the conduct of Plaintiff's counsel. (ECF No. 101 at 8–9). This is not the first time the subpoenaed entities have requested attorneys' fees be awarded against Plaintiff. (ECF Nos. 81; 82 (withdrawing request for attorneys' fees)). However, there is no motion for attorney's fees pending before the court and the court declines to address such a request raised in passing in a reply to objections.

counsel and therefore require parties to expend efforts to resolve such disputes among themselves prior to seeking the court's involvement." *Kilmon v. Saulsbury Indus., Inc*., No. 17-cv-99, 2018 WL 5800759, at *2 (W.D. Tex. Feb. 13, 2018). Counsel are reminded to comport themselves in line with the highest standards of professional responsibility for the remainder of this case. In the event of further discovery disputes requiring court involvement, the court reserves the right to impose sanctions, including fees, against the losing side.

## V. Conclusion

For the foregoing reasons, the court ADOPTS the Report (ECF No. 96) and hereby **DENIES** Plaintiff's motion for contempt, for sanctions, and to compel (ECF No. 57).

**IT IS SO ORDERED.**

s/ Timothy M. Cain  
United States District Judge

March 24, 2022  
Anderson, South Carolina