IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Marta Gomez, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 6:20-cv-2156-TMC |
| v. | ) | |
| | ) | **ORDER** |
| Easlan Management, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff Marta Gomez filed this action against Defendant Easlan Management, her former employer, asserting claims for discrimination based on race and national origin in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e to 2000e-17, and racial discrimination in violation of 42 U.S.C. § 1981. (ECF No. 10). The case was then referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.) for the handling of all pretrial matters.

The court is now presented with the magistrate judge's Report and Recommendation (the "Report") (ECF No. 140), recommending that the Court grant Defendant's motion for summary judgment (ECF No. 109). Plaintiff filed objections to the Report, (ECF No. 143), and Defendant submitted a reply (ECF No. 144). The court concludes that the issues have been adequately developed for purposes of this motion and that a hearing is unnecessary for the court to issue a ruling. Local Civil Rule 7.08 (D.S.C.).[1]

---

[1] Between Defendant's motion for summary judgment (ECF No. 109), Plaintiff's response in opposition to summary judgment (ECF No. 520), Defendant's reply in support of summary judgment (ECF No. 120), and all of the associated exhibits submitted by the parties, the court is presented with 1,180 pages of material. Plaintiff, as noted, also filed objections to the Report (totaling 32 pages) (ECF No. 143) and Defendant filed a 13-page reply to the objections (ECF No.

As set forth below, despite the excellent Report from the magistrate judge, the court is constrained to deny the motion for summary judgment and allow the factual issues to be decided by a jury.

## I. Background

Plaintiff, who is of Puerto Rican descent, began working at the Hampton Forest apartment complex in Greenville, South Carolina, in April 2018. (ECF No. 10 at 1). In December 2018, the Hampton Forest property (the "Property") was acquired by 2207WH, LLC, an entity that was controlled by PassiveInvesting.com, LLC, whose members included Daniel Handford, Danny Randazzo, and Brandon Abbott. (ECF No. 109-3 at 19–20). The new owners intended to renovate the Property and market it under the new name "2207 North." (ECF No. 112-8 at 1). The owners hired Defendant to perform property management services for 2207 North, including "managing finances, implementing the owner's directives, and hiring an onsite team to handle residents, leasing, marketing, maintenance, and other onsite operations." (ECF No. 109-2 at 2).

Defendant, in turn, hired Plaintiff to continue serving as Property Manager and Sheena Gaskin ("Gaskin") to continue as leasing agent for the Property. (ECF No. 112-8 at 1). Plaintiff reported directly to Sally Garza, Defendant's regional manager. *Id*. As Property Manager, Plaintiff's job duties included following up on calls and messages, making sure the Property grounds were presentable, showing apartments and processing rental applications, scheduling cleaning, handling utilities and maintenance requests, conducting staff meetings and scheduling social events. Plaintiff's property management duties also including marketing the Property to local businesses and using Yardi software to track occupancy information. (ECF No. 109-4 at 67–

---

144). In light of these voluminous submissions, the court is reminded that "it is with words as with sunbeams--the more they are condensed, the deeper they burn."—Robert Southey.

70). Defendant hired Gaskin as leasing agent, and Plaintiff delegated tasks relating to leasing and occupancy to Gaskin. *Id.* at 18–19.

The renovations to the Property began in January or February of 2019. The renovations were substantial and included projects such as replacing/upgrading countertops and appliances, installing luxury tile, replacing windows, renovating hallways, and replacing or repairing lighting and roofs. According to Plaintiff, the renovations proceeded much slower than anticipated, thereby limiting the number of units available for rent and making it difficult to attract tenants in light of the noise and debris generated by the ongoing construction. As a result, the occupancy rate for the Property suffered, as residents had to vacate in order for the units to be renovated. At the beginning of 2019, the Property enjoyed an occupancy rate of 93.10% but steadily declined throughout the year.

In March 2019, Gaskin, the leasing agent, was replaced by Elisha Codringham ("Codringham") through a temporary staffing agency. (ECF No. 112-8 at 2). Codringham, who is black, performed all the duties related to leasing at the Property and, in Plaintiff's view, did an excellent job. *Id*. Plaintiff wanted Defendant to hire Codrington on a full-time basis, and Garza, the Regional Manager, agreed. *Id*. In May 2019, it was apparently decided that, instead of paying the temp agency a buyout fee in order to hire Codrington directly, Defendant should wait until the buyout fee was $0 and extend an offer to Codrington at that point. (ECF No. 112-19 at 3).[2]

Aubrey Leonard ("Leonard"), who is white, was subsequently hired to replace Garza as Regional Manager in June 2019. On June 24, 2019, Randazzo emailed Plaintiff, Leonard, and the other owners of the Property, stating that the occupancy rate was 72% but that the goal was 90%

---

[2] The buyout fee due to the temporary staffing agency decreased with every hour worked by Codrington. (ECF No. 112-19 at 3).

3

occupancy. (ECF No. 109-4 at 72). To monitor performance goals related to the Property, Leonard implemented the Monday Morning Report ("MMR"), *id*. at 36, which was distributed to the Property owners and listed the current occupancy goal, budgeted occupancy, actual occupancy rate, and pre-leased rate, among other items, (ECF No. 109-4 at 76). Plaintiff obtained occupancy and leasing information for the MMRs from the Yardi software used by Defendant. The MMR was discussed during a weekly conference call on Monday mornings between Plaintiff, Leonard and owners of the Property. (ECF No. 109-4 at 102).

In June and July, Plaintiff asked Leonard several times about the status of hiring Codrington, but, according to Plaintiff, Leonard never responded and never interviewed Codrington. (ECF No. 112-8 at 2). Ultimately, Leonard directed Plaintiff to call the temporary staffing agency and inform them that Defendant no longer needed Codrington. *Id*. Leonard told Plaintiff that "the owners could not afford to hire a temporary employee" even though Codrington's buyout had decreased to $0. *Id*. Additionally, Leonard told Plaintiff that Codrington did not attract "the right demographic." *Id*. On July 17, 2019, Leonard emailed Randazzo to recommend a white candidate, Lauren Burton ("Burton"), for leasing agent/assistant manager. (ECF No. 112-62 at 2). Burton, who Leonard described as a "friend," had previously worked at a property undergoing renovations similar to those occurring at 2207 North. (ECF No. 112-8 at 3). Leonard concluded that Defendant should not hire Codrington after considering "the performance of the community and looking at the marketing and getting the occupancy up" and believed Burton "could help [Plaintiff] with the social media and online marketing skills and resident events." (ECF No. 109-7 at 54). In late July 2019, Defendant hired Burton who, like Codrington, leased apartments, met with potential tenants, and promoted the Property. (ECF No. 112-8 at 3). And,

4

despite Leonard's statement to Plaintiff that Defendant could not afford a temporary employee, Defendant hired Burton at a higher rate than Codrington.

The Property's occupancy rate declined steadily from a high of 93.1% in January 2019 to a low of 69.2% in June 2019; however, the occupancy rate then improved slightly in July (72.3%), August (73.8%), September (76.9%), and through the first week of October 2019 (78.46%). There is no dispute that the extensive renovations affected the occupancy rates during this time. Renovations were often not completed on time, and there were often no vacant, ready-to-move-in units; moreover, even when units were renovated in a timely fashion, the "construction noise and debris" on the Property presented additional obstacles that affected occupancy. (ECF No. 112-8 at 5). Plaintiff complained that the renovations were making it difficult to lease units, and Leonard responded that the ownership group was addressing these issues and that "it would be [her] position to take care of those issues to enable [Plaintiff] to be successful." (ECF No. 109-7 at 78). Nevertheless, Leonard believed it was Defendant's job to overcome these problems and noted that Plaintiff was given a "model unit to show our potential prospects" and indicate that the actual unit would be "in another building" and would be ready on the scheduled move-in date. *Id*. at 118–19.

As noted in the Report, on September 9, 2019, Leonard sent an email to Plaintiff and Burton stating that the occupancy rate had been trending at 75.89% and that "[w]e need to lease and move . . . 19 units in the next four weeks to get to 90%" which 'breaks out to five leases a week.'" (ECF No. 112-16 at 1). Leonard further directed them to provide a daily report to both her and Mike Holmes, Defendant's President, *see id*., detailing traffic, new leases, renewals and other information on a daily basis, (ECF No. 109-4 at 82). According to Leonard, daily reports are necessary when a property management team is falling short of its goals. (ECF No. 109-7 at 38).

On October 4, 2019, Plaintiff was terminated based on the Property's poor performance and the failure to achieve the occupancy goal. (ECF No. 112-8 at 13). Three days prior to the termination of Plaintiff, Leonard sent a letter to Burton, the leasing agent/assistant manager whose focus was leasing units at the Property, offering her a promotion to Plaintiff's position of Property Manager and a raise based on her "positive impact on the performance of the property." (ECF No. 112-36 at 1). Defendant did not consult with the Property owners before removing Plaintiff as Property Manager; the owners learned of Plaintiff's termination after the fact. (ECF No. 109-3 at 74–75). Burton served as Property Manager for 2207 North from October 2019 into 2020, when she was replaced by Hannah Whitt—also white. who managed the Property until the owners sold it 2021. The occupancy rate actually declined very slightly in Burton's first month as Property Manager, (ECF No. 112-5 at 23), and Burton never met the 90% occupancy rate goal. However, the occupancy rate rose above 85% by December 2019 and remained there through May 2020. (ECF No. 109-2 at 54–92).

Plaintiff brought this action in June 2020, (ECF No. 1), alleging claims for race and national origin discrimination under Title VII and racial discrimination in violation of § 1981, (ECF No. 10). On February 1, 2023, the magistrate judge issued the Report (ECF No. 140) recommending the court grant Defendant's motion for summary judgment (ECF No. 109). On February 15, 2023, Plaintiff filed her objections to the Report (ECF No. 143) and, on March 1, 2023, Defendant filed a reply to Plaintiff's objections (ECF No. 144).

## II. Report

As the magistrate judge correctly observed, Plaintiff "may establish liability under Title VII by employing two methods of proof: (1) 'demonstrating through direct or circumstantial evidence that [her] race was a motivating factor in the employer's adverse employment action'; or

(2) relying on the burden shifting scheme set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 (1973)." *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 747 (4th Cir. 2017) (quoting *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 213–14 (4th Cir. 2007)). (ECF No. 140 at 14). As an initial matter, the magistrate judge found that Plaintiff did not produce any direct or indirect evidence of discrimination, noting that "Plaintiff has failed to direct the Court even to circumstantial evidence showing Plaintiff's race and/or national origin was a motivating factor in her termination." (ECF No. 140 at 14 n.10). The magistrate judge concluded that the closest Plaintiff came to producing such evidence was Plaintiff's testimony that *Codrington*—not Plaintiff—did not attract the right demographic. *Id*. The magistrate judge rejected this testimony as probative of discrimination because Plaintiff "never explains how a vague reference to demographics tends to show race or national origin discrimination, particularly where the deposition testimony suggests demographics in the apartment leasing industry refers to income." *Id*.

Accordingly, the magistrate judge considered whether Plaintiff's claims survive summary judgment under the burden-shifting framework set forth in *McDonnell Douglas*. (ECF No. 140 at 14 n.10). The *McDonnell Douglas* framework has three steps: (1) "[f]irst, the plaintiff must establish a *prima facie* case of racial discrimination"; (2) "[t]hen the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment decision"; and (3) "[f]inally, the burden shifts back to the plaintiff to show that the employer's proffered legitimate, nondiscriminatory reason is a pretext." *Lyons v. City of Alexandria*, 35 F.4th 285, 289 (4th Cir. 2022). Assuming for purposes of analysis that Plaintiff proffered sufficient evidence to establish

a prima facie case of race discrimination[3], the magistrate judge concluded that Defendant's claim (ECF No. 109-1 at 31) that Plaintiff was fired because of her poor performance as property manager constitutes a legitimate, nondiscriminatory reason for terminating Plaintiff. (ECF No. 140 at 15). The Report cited evidence supporting the Defendant's nondiscriminatory reason: Wilkerson's testimony, as a third-party provider of HR services for Defendant, that she told Plaintiff "that she was being terminated for poor performance" and was not "meeting the company's expectations," (ECF No. 140 at 15–16 (citing ECF No. 112-7 at 26)); Plaintiff's statement that Leonard stated her termination was based on the poor "performance of the [P]roperty," *id*. at 16 (citing ECF No. 112-8); the June 24, 2019, email from Randazzo to Plaintiff, Leonard, and the other owners of the Property, stating that the occupancy goal was 90% occupancy, (ECF No. 140 at 16 (citing ECF No. 109-4 at 72)); and evidence showing that in the three months leading to Plaintiff's termination, the occupancy rate never rose above 76.9%.

The magistrate judge then turned to consider "whether Plaintiff has met her burden of demonstrating that Defendant's proffered reason is merely a pretext for discrimination" which, the Report stated, generally requires a Title VII plaintiff to prove "both that the reason was false, and that discrimination was the real reason for the challenged conduct." (ECF No 140 at 16 (quoting *Jiminez v. Mary Washington Coll.*, 57 F.3d 369, 378 (4th Cir. 1995))). The magistrate judge noted, however, that "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the

---

[3] In order to establish a prima facie case of discrimination, a plaintiff must demonstrate that (1) she is a member of a protected class; (2) she was subjected to an adverse employment action; (3) she was performing her job satisfactorily; and (4) the adverse employment action occurred "under circumstances giving rise to an inference of unlawful discrimination." *Adams v. Trustee of the Univ. of N.C.-Wilmington*, 640 F.3d 550, 558 (4th Cir. 2011).

employer unlawfully discriminated." *Id*. at 17 (quoting *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 148 (2000)).

The magistrate judge rejected Plaintiff's argument that Defendant's performance-based reason for termination is contradicted by other evidence. Plaintiff points to the fact that Leonard never complained to Plaintiff about her performance or warned that Plaintiff's performance was deficient and that her job could be in jeopardy. (ECF No. 140 at 17). While acknowledging that no formal warnings were issued, the magistrate judge noted the record contains numerous emails reflecting that Leonard was "trying to get the performance on point." *Id*. Such evidence included emails admonishing Plaintiff for missing or being late to join the Monday morning phone call to discuss the MMR, emails indicating Plaintiff had not yet provided the MMR and needed to do so, and the June 24 email from Randazzo stating that the occupancy goal was 90% and laying out the steps required to achieve that goal. *Id*. at 17–18 n.13.[4]

Next, the magistrate judge rejected Plaintiff's argument based on comparator evidence that "Burton was not terminated even though the occupancy rate decreased, and the property upkeep declined when she became property manager and that Whitt was not terminated even though the Property's owners complained about her and she made other errors." (ECF No. 140 at 20). The

---

[4] Plaintiff also highlighted two emails where Leonard seemed to praise the performance relating to occupancy of the Property which, in Plaintiff's view, undercut the idea that Plaintiff's performance was deficient. (ECF No. 112 at 8). In a September 25, 2019, email to Burton and copied to Plaintiff and Randazzo, Leonard stated: "Great job on two leases this week!! Keep going!! It looks as that trend is getting stronger!" (ECF No. 112-63). Additionally, in a September 3, 2019 email to Plaintiff and copied to members of the ownership group, Leonard stated, "Great Job 2207 Team for this quick turn around on today's marketing efforts!! This is how we move the needle!! Keep up the great work and keep making that impact!" (ECF No. 112-32). The magistrate judge determined that this evidence failed to create an issue of fact regarding pretext primarily because "[n]othing in these emails contradicts the evidence that the Property's occupancy rate never rose to the 90% goal while Plaintiff was property manager, that she knew that was the goal, and that she was ultimately responsible for the Property's performance as property manager." (ECF No. 140 at 19).

magistrate judge found, however, that "the record evidence shows that, although the occupancy rate decreased in Burton's first month as property manager, the occupancy rate increased significantly more in the three months after Plaintiff was terminated than it did in when Plaintiff was property manager" and, therefore, that "Plaintiff cannot show that Burton and/or Whitt were treated more favorably under similar circumstances." *Id*. at 21.

Finally, the magistrate judge rejected Plaintiff's contention that Defendant has offered new reasons for terminating Plaintiff and that changing the basis for termination is evidence of pretext. *Id*. at 22. The magistrate judge explained that "[a]lthough Defendant has since provided more specific examples of ways Plaintiff was not meeting expectations . . . these examples 'demonstrate[] that Plaintiff lacked judgment in setting priorities and that management understandably lacked confidence in Plaintiff's ability to lead the [P]roperty' to its 90% occupancy goal." *Id*. at 22 (quoting Defendant's Reply in support of summary judgment, ECF No. 120 at 5).

Accordingly, the Report recommends that the court grant Defendant's motion for summary judgment (ECF No. 109).

### III. Standard of Review

The recommendations set forth in the Report have no presumptive weight, and this court remains responsible for making a final determination in this matter. *Wimmer v. Cook*, 774 F.2d 68, 72 (4th Cir. 1985) (quoting *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976)). The court is charged with making a *de novo* determination of those portions of the Report to which a specific objection is made, and the court may accept, reject, modify, in whole or in part, the recommendation of the magistrate judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1). However, the court need only review for clear error "those portions which are not objected to—including those portions to which only 'general and conclusory' objections have been made[.]" *Dunlap v. TM*

*Trucking of the Carolinas, LLC*, 288 F. Supp. 3d 654, 662 (D.S.C. 2017). "An objection is specific if it 'enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute.'" *Id*. at 662 n.6 (quoting *United States v. One Parcel of Real Prop., With Bldgs., Appurtenances, Improvements, & Contents, Known As: 2121 E. 30th St., Tulsa, Okla*., 73 F.3d 1057, 1059 (10th Cir. 1996)). On the other hand, objections which merely restate arguments already presented to and ruled on by the magistrate judge or the court do not constitute specific objections. *See, e.g., Howard v. Saul*, 408 F. Supp. 3d 721, 726 (D.S.C. 2019) (noting "[c]ourts will not find specific objections where parties 'merely restate word for word or rehash the same arguments presented in their [earlier] filings'"); *Ashworth v. Cartledge*, No. 6:11-cv-01472-JMC, 2012 WL 931084, at *1 (D.S.C. March 19, 2012) (noting that objections which were "merely almost verbatim restatements of arguments made in his response in opposition to Respondent's Motion for Summary Judgment . . . do not alert the court to matters which were erroneously considered by the Magistrate Judge"). Similarly, objections which "merely express disagreement with the magistrate judge's Report . . . in lieu of any actual argument or specific assertion of error in the magistrate judge's findings" do not constitute specific objections requiring de novo review by this court. *Lowdermilk v. LaManna*, No. 8:07-2944-GRA, 2009 WL 2601470, at *2 (D.S.C. Aug. 21, 2009); *see also Orpiano v. Johnson*, 687 F.2d 44, 47–48 (4th Cir. 1982) (noting that de novo review is not required where a party makes only general and conclusory objections that do not direct the court to a specific error in the Report). Furthermore, in the absence of specific objections to the Report, the court is not required to give any explanation for adopting the magistrate judge's recommendation. *Greenspan v. Brothers Prop. Corp*., 103 F. Supp. 3d 734, 737 (D.S.C. 2015) (citing *Camby v. Davis*, 718 F.2d 198, 199–200 (4th Cir. 1983)).

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  Rule 56 mandates entry of summary judgment "'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'"  *Phillips v. Nlyte Software Am. Ltd.*, 615 Fed. App'x 151, 152 (4th Cir. 2015) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

"'In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities in favor of the nonmoving party.'"  *Sellers v. Keller Unlimited LLC*, 388 F. Supp. 3d 646, 649 (D.S.C. 2019) (quoting *HealthSouth Rehab. Hosp. v. Am. Nat'l Red Cross*, 101 F.3d 1005, 1008 (4th Cir. 1996)).  However, "'[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.'" *McKinney v. G4S Gov't Sols., Inc.*, 711 Fed. App'x 130, 134 (4th Cir. 2017) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The moving party has the burden of proving that summary judgment is appropriate. *Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. Lane & Roderick, Inc.*, 736 Fed. App'x 400, 400 (4th Cir. 2018) (citing *Celotex Corp.*, 477 U.S. at 322–23). Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth

specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(c), (e); *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 540 (4th Cir. 2015).

IV.  Discussion

**A. Magistrate Judge's Consideration of Evidence Not Specifically Cited**

The court first addresses Plaintiff's objection to the magistrate judge's consideration of evidence in the materials submitted to the court but not specifically cited or relied upon by Defendant. This argument runs throughout Plaintiff's objections and is repeated as to various specific conclusions set forth in the Report. (ECF No. 143 at 2, 7–9, 10, 11). In each instance, Plaintiff contends that the magistrate judge committed error in considering a portion of the record not specifically cited by Defendant. The court disagrees. To be sure, "district courts are not required to 'mine' the record looking for evidence not presented by the parties" in support of or in opposition to summary judgment. *A.L. v. Jackson Cnty. Sch. Bd.*, 635 F. App'x 774, 786 (11th Cir. 2015). On the other hand, it is certainly not error for a district court, if it so chooses, to rely upon record evidence not specifically cited by the parties in the context of a motion for summary judgment. *See Tube-Mac Indus., Inc. v. Campbell*, No. 2:20-cv-197 (RCY), 2021 WL 4552121, at *1 (E.D. Va. Oct. 5, 2021) (noting that Rule 56 of "[t]he Federal Rules of Civil Procedure allow, but do not require, courts to consider materials on the record that have not been cited to by either party"). Indeed, the Federal Rules specifically permit this practice: "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3); *see Bartos v. PDC Energy, Inc.*, 275 F. Supp. 3d 755, 766 (N.D.W. Va. 2017) (applying Rule 56(c)(3) in employment discrimination context to consider record materials not cited or relied upon by parties). Accordingly, the court overrules this objection.

**B. Objections as to Analysis and Findings Regarding Legitimate Nondiscriminatory Reason**

13

Plaintiff objects on several grounds to the magistrate judge's conclusion that Defendant established a legitimate, nondiscriminatory reason for terminating plaintiff. Plaintiff contends this conclusion is not based on proper or admissible evidence. (ECF No. 143 at 7). The Magistrate Judge cites three sources. First, the Report relies upon the deposition testimony of Wilkerson, Defendant's outside HR consultant that she met with Leonard and then conducted a termination meeting with Plaintiff during which "I told her that she was being terminated for poor performance" and that she "wasn't meeting the company's expectations." (ECF No. 112-7 at 26). Plaintiff contends that there are several problems with the magistrate judge's reliance on this testimony: it contains inadmissible hearsay; Defendant did not rely on it in support of its summary judgment motion; and it is a vague and does not state *why* Defendant made the termination decision. (ECF No. 143 at 8).

Second, the Report cites the following statements in Plaintiff's Declaration:

¶ 70. I was terminated on October 4, 2019.

¶ 71. Leonard told me that I was terminated because of the performance of the property, i.e., 2207 North. She never told me that I had performed poorly or that I did not meet expectations in any particular area.

(ECF Nos. 112-8 at 13; 140 at 15–16). Plaintiff argues that, because Paragraph 71 "states what Leonard . . . told Gomez," is inadmissible hearsay. (ECF No. 142 at 8–10). Plaintiff contends that "[a]lthough that would be admissible for the purpose of what Leonard told her, it is *not* admissible for the truth of the matter when offered by [Defendant] (the declarant). There is no hearsay exception for what a party said when offered by that party if the evidence seeks to prove the truth of the asserted matter." *Id*. at 8 – 9 (citing Fed. R. Evid. 802). Additionally, as with Wilkerson's testimony, Plaintiff argues the magistrate judge erroneously relied on Gomez's statement because Defendant did not rely on it in moving for judgment. (ECF No. 143 at 9).

14

The third piece of evidence cited in the Report in support of the determination that Defendant stated a legitimate nondiscriminatory reason is an employment separation form produced by outside HR consulting firm Landrum, Wilkerson's employer, indicating Plaintiff had separated from Defendant and noted "Owner request – non performance." (ECF Nos. 112-38; 140 at 11). Plaintiff objects to this evidence because it was not cited by Defendant, and it is a "multi-level hearsay document that falls within no exception *when offered by [Defendant]*." (ECF No. 143 at 9) (emphasis added).

Defendant filed a reply generally arguing that the magistrate judge correctly determined that it offered a legitimate, nondiscriminatory reason for terminating Plaintiff (ECF No. 144 at 4–6); however, Defendant does not offer specific responses to Plaintiff's objections to this portion of the Report.

### *1.* **Objections based on consideration of evidence not cited by Defendant.**

The court overrules these objections for the reasons previously discussed.

### *2.* **Objections based on hearsay.**

Plaintiff contends that each of these sources relied upon by the magistrate judge contain hearsay and therefore cannot be used to establish a legitimate, nondiscriminatory reason for terminating Plaintiff. "[H]earsay evidence, which is inadmissible at trial, cannot be considered on a motion for summary judgment." *Lyons v. City of Alexandria*, 35 F.4th 285, 290 n.4 (4th Cir. 2022) (internal quotation marks omitted). As to Leonard's statement set forth in Plaintiff's affidavit that Plaintiff had been terminated based on the performance of the property, Plaintiff argues it is not admissible as an opposing party's statement under Rule 801(d)(2)(D) (providing that a statement is not hearsay if "[t]he statement is offered against an opposing party and . . . was made by the party's agent or employee on a matter within the scope of that relationship and while

15

it existed") because it was not offered *against* Defendant. Plaintiff, however, presented her Declaration to the court in opposition to Defendant's motion for summary judgment; the court is not inclined to find the magistrate judge in error where Plaintiff now objects to the court's consideration of that same evidence. With respect to Wilkerson's deposition testimony about what she told Plaintiff during the termination meeting—also submitted by Plaintiff—the court notes Wilkerson testimony is consistent with Plaintiff's Declaration. Although the court agrees with Plaintiff that the evidence is vague and does not pinpoint why Plaintiff's performance was deficient, this shortcoming goes more to whether a question of fact exists as to pretext. Thus, the court declines to deviate from the magistrate judge's recommendation on the basis that the Report relied on this evidence. Finally, with respect to the HR form, the court recognizes, as Plaintiff argues, that such a form, without more, may well be inadmissible. *See, e.g.*, *Buchanan v. Tata Consultancy Servs., Ltd*., No. 15-cv-01696-YGR, 2018 WL 7048387, at *1 (N.D. Cal. Oct. 23, 2018) ("The termination forms contain hearsay and do not fall within any of the exceptions to the rule against hearsay. These forms are prepared by the human resources department in preparation of a request to terminate an employee."). Accordingly, the court finds no reason to reject the recommendation of the magistrate judge based on her consideration of the foregoing evidence as part of the analysis in the Report.[5]

## C. Objections Related to Pretext Analysis and Findings

### 1. "Pretext Plus"

In applying the *McDonnell Douglas* burden-shifting framework to Plaintiff's claim, the magistrate judge stated that "to prove an employer's articulated reason is a pretext for

---

[5] However, the court reserves ruling on whether such items constitute hearsay or fall within an exception or exclusion to the hearsay rule.

discrimination, a plaintiff 'must prove 'both that the reason was false, and that discrimination was the real reason' for the challenged conduct.'" (ECF No. 140 at 16–17 (quoting *Jiminez v. Mary Washington Coll.*, 57 F.3d 369, 378 (4th Cir. 1995)). The magistrate judge recognized, however, that *Reeves v. Sanderson Plumbing Products, Inc.* made clear "'a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.'" *Id*. at 17 (quoting *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 148 (2000)).

Plaintiff objects to the magistrate judge's statement of what is required for the Plaintiff to demonstrate pretext, arguing that the magistrate judge "essentially revived the long-rejected pretext-plus standard" by citing *Jimenez* and stating that pretext "requires two showings: (1) that the employer's reason is false; and (2) that discrimination was the real reason." (ECF No. 143 at 13). Plaintiff argues, correctly, that after *Reeves*, the plaintiff need only produce sufficient evidence of the falsity of the employer's proffered reason for the adverse employment action. (ECF No. 143 at 13). As the Fourth Circuit has explained in no uncertain terms, Plaintiff is not required to make these two showings:

> The pretext-plus doctrine stems from a line of cases in which some circuits, including this one, had held that an employee could never demonstrate pretext, as is her burden at the third and final *McDonnell Douglas* stage, solely by undermining an employer's proffered explanation. *See Reeves*, 530 U.S. at 140–41. Instead, these courts had required, as a matter of law, that an employee introduce new evidence, separate from her prima facie case, that not only undercut the employer's justification but also showed a specific and discriminatory motive. *See id*. (collecting cases). In contrast, other circuits had held that an employee's proof of a prima facie case of discrimination, combined with sufficient evidence for a factfinder to reject an employer's proffered non-discriminatory reason, could suffice to sustain a finding of liability for intentional discrimination. *See id*. at 140 (collecting cases). . . .
>
> In 2000, the Supreme Court in *Reeves* resolved the circuit split and abrogated this court's pretext-plus standard.

17

*Westmoreland v. TWC Admin. LLC*, 924 F.3d 718, 726–27 (4th Cir. 2019). *Jiminez* is one of the cases employing the now-abrogated pretext-plus standard. *See id.* at 726 n.3.

Merely citing *Jiminez* does not necessarily constitute error. *See Campbell v. Wormuth*, No. 19-2395, 2022 WL 17958643, at *4 (4th Cir. Dec. 27, 2022) (applying *Reeves* but also citing *Jiminez*). As noted, the magistrate judge recognized that *Reeves* applies and that plaintiff's prima facie case, combined with evidence permitting a factfinder to conclude the employer's asserted justification is false, is sufficient to show pretext. (ECF No. 140 at 17). Under the circumstances, the court cannot conclude that the magistrate judge applied an erroneously high standard of proof. This objection is overruled.

**2. Objections Relating to the Magistrate Judge's Determination that Plaintiff Failed to Demonstrate a Genuine Factual Dispute as to Pretext**

Plaintiff argues that she introduced sufficient evidence to contradict Defendant's evidence that Plaintiff was terminated for performance issues and to create an issue of material fact as to pretext. (ECF No. 143 at 16–18). Plaintiff points to the following evidence:

- Email feedback on September 25, 2019, from Leonard to Burton and Plaintiff reflecting that she was pleased with the performance at the time: "Great job on two leases this week!! Keep going!! It looks like this trend is getting stronger." (ECF No. 112-63).

- Email feedback on September 3, 2019, from Leonard to Plaintiff, Burton and members of the ownership team stating praising Plaintiff and the 2207 North team: "Great job 2207 Team for this quick turn around on today's marketing efforts . . . Keep up the great work and keep making that impact!" (ECF No. 112-32).

- Leonard never wrote up Plaintiff or requested that their HR consultant do so, and Plaintiff never received any warnings during her employment with Defendant. (ECF Nos. 112-6 at 99; 112-8 at 4).

- Plaintiff was never counseled or told that her performance was deficient or that her job was in jeopardy. (ECF Nos. 112-7 at 15; 112-8 at 4).

- The ownership group never complained about Plaintiff. (ECF Nos. 112-2 at 20; 112-6 at 18). In fact, in the summer of 2019, Abbott, one of the owners, discussed the possibility of Plaintiff increasing her responsibilities to manage more than one property. (ECF No. 112-8 at 7).

(ECF No. 143 at 16–17). Although the magistrate judge cited Leonard's testimony that Plaintiff was given "continual coaching" in an effort to improve her performance, Plaintiff's evidence regarding the absence of any criticism, complaints or warnings about her performance seems to be unrefuted. Plaintiff also points out that Plaintiff's replacement and successor Burton did not achieve 90% occupancy and that Burton was promoted to Property Manager after being praised for the same occupancy rate achieved by Plaintiff and the 2207 North team. (ECF No. 143 at 23–24). Plaintiff argues that this evidence, in addition to the evidence outlined above, could lead a reasonable jury to question Defendant's evidence that Plaintiff was fired for deficient performance. *Id*. at 19.

The court is constrained to conclude that Plaintiff's objection is well-taken and that sufficient evidence exists to create "a genuine dispute of material fact on the question of pretext sufficient to make [the employer's] proffered justification a triable issue." *Guessous v. Fairview Prop. Invs*., LLC, 828 F.3d 208, 217 (4th Cir. 2016). Accordingly, , the court is forced to conclude that sufficient evidence exists to require the case to continue under the applicable framework.

## V. Conclusion

Having carefully considered the excellent Report of the magistrate judge in light of the record and the submissions of the parties, the court, for the reasons stated herein, respectfully

19

declines to adopt the Report (ECF No. 140) and **DENIES** Defendant's motion for summary judgment. (ECF No. 109).

**IT IS SO ORDERED**.

s/Timothy M. Cain<br>
United States District Judge

March 30, 2023
Anderson, South Carolina